IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

DANA GLEAVES,

        Defendant.

No. CR12-4011

REPORT AND
RECOMMENDATION

---

**TABLE OF CONTENTS**

I.    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   *PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  *RELEVANT FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.    *Initial Investigation* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.    *June 29, 2011 Search Warrant* . . . . . . . . . . . . . . . . . . . . . . 4

IV.  *ISSUES PRESENTED* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

V.   *DISCUSSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
     A.    *Was the Motion to Suppress Timely Filed?* . . . . . . . . . . . . . . . 7
     B.    *Was the Search Warrant Supported by Probable Cause?* . . . . . . . . . 8
     C.    *Was the Search Warrant Overbroad?* . . . . . . . . . . . . . . . . . . . 14
     D.    *Is the Leon Good-Faith Exception Applicable?* . . . . . . . . . . . . . 15
     E.    *Summary* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

VI.  *RECOMMENDATION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*I. INTRODUCTION*

On the 24th day of April 2012, this matter came on for hearing on the Motion to
Suppress Evidence (docket number 26) filed by the Defendant on April 9, 2012. The

Government was represented by Assistant United States Attorney Mark A. Tremmel. Defendant Dana Gleaves appeared personally and was represented by his attorney, Joshua W. Weir.[1]

## II. PROCEDURAL HISTORY

On February 23, 2012, Defendant Dana Gleaves was charged by Indictment (docket number 2) with one count of sexual exploitation of a child. Defendant appeared for arraignment on March 1, 2012 and entered a plea of not guilty. Trial was initially scheduled for May 7, 2012, but was subsequently continued to June 4, 2012.

On April 9, 2012, Defendant filed the instant motion to suppress evidence. Defendant asks that the Court exclude any evidence seized from his residence, vehicle, or person on June 29, 2011, and that any "fruits of the search" be similarly excluded. The Government filed a Resistance (docket number 32) on April 17, 2012. With the Court's permission, both parties filed supplemental post-hearing briefs on April 25, 2012. *See* docket numbers 34 and 35.

## III. RELEVANT FACTS

### A. Initial Investigation

Detective Troy Hansen of the Sioux City Police Department testified that on June 24, 2011, the Iowa Department of Human Services ("DHS") received a report of possible sexual abuse of a juvenile male with the initials J.P.[2] According to Hansen, Heidi Roberts of the DHS told Officer Karl Bonowski that she had received an anonymous phone call stating that J.P. was sending nude photos of himself to Dana Gleaves, at Gleaves' request,

---

[1] The hearing was conducted without objection by videoconferencing. Defendant, Defendant's counsel, and the witness appeared in Sioux City. Counsel for the Government and the court reporter appeared in Cedar Rapids. I presided at the hearing from the courthouse in Cedar Rapids.

[2] "J.P." was identified by name at that time. J.P. is also identified by name in an attachment prepared by Detective Hansen to a later search warrant application. For purposes of this Report and Recommendation, however, I will refer to him as J.P.

using J.P.'s cell phone. The anonymous caller said J.P. was "possibly an eighth grader" and Gleaves was a baseball coach. Pursuant to DHS policy, the caller was not identified, but her phone number was provided to Bonowski. In his report, Bonowski noted Defendant's date of birth and J.P.'s date of birth.

Detective Hansen was assigned to the case on June 28. After reading Officer Bonowski's report, Hansen called the phone number provided by the DHS and spoke with an unidentified female. The anonymous informant provided the same information which was previously given to the DHS. The person told Hansen that she got the information from her daughter, who got it from a friend in the neighborhood, and that "at some point it came from J.P." Hansen then went to J.P.'s residence. No one was home and Hansen left his card. Hansen also called and left a message. In a phone conversation with one of J.P.'s parents later that day, it was agreed that J.P. and his parents would meet with Hansen at the police station on the following morning.

At approximately 8:00 a.m. on June 29, J.P.'s parents brought J.P. to the Sioux City Police Department, where he was interviewed by Detective Hansen.[3] In addition to the information included by Hansen in an application for a search warrant prepared later that day (discussed below), J.P. told Hansen that Defendant had coached him in baseball and football. J.P. stated that Defendant had touched J.P.'s penis and photographed it approximately 20 times, but that Defendant had never asked J.P. to touch Defendant's "private parts." The last nude photo which J.P. sent to Defendant was on June 28 at approximately 5:15 p.m.[4] J.P. told Hansen during the interview that he was 15 years old.

---

[3] The interview was video recorded, with a DVD of the interview introduced at the instant hearing as Government's Exhibit 4.

[4] In addition to the DVD of the interview, the Government offered the applications, attachments, and search warrants subsequently obtained on July 6, 2011 and January 12, 2012 in state court and federal court, respectively, for the purpose of establishing additional facts known to Detective Hansen on June 29, 2011, but not included in his
(continued...)

3

### B. *June 29, 2011 Search Warrant*

Following the interview with J.P. on June 29, 2011, Detective Hansen prepared an application for a search warrant.[5] The application sought court authority to search "the person of Dana Gleaves" and his residence on Alice Street in Sioux City for a computer, cell phone, and other electronic storage devices. The "officer's attachment" to the application included the following allegations:

> 1.     On June 24, 2011, an unknown individual called the Department of Human Services to report possible Sexual Abuse of a juvenile male named J.P.
>
> 2.     The caller stated that J.P.'s baseball coach, Dana Gleaves, has been asking for and receiving nude photographs of J.P.
>
> 3.     On June 28, Detective Hansen (the affiant) was assigned to the case.
>
> 4.     On June 28, Hansen contacted J.P.'s mother and it was decided that J.P.'s parents would bring J.P. to the Sioux City Police Department on the following day to be interviewed regarding the information.
>
> 5.     On June 29 at approximately 8:00 a.m., Hansen met with J.P. and his parents in an interview room.
>
> 6.     During the interview, J.P. stated that he has known Defendant for approximately three years, and that Defendant coaches J.P.'s baseball team. According to J.P., Defendant coaches baseball, football, and basketball.
>
> 7.     J.P. stated that approximately one year earlier Defendant approached J.P. and asked for a nude photograph of J.P.

---

[4](...continued)
application for the initial search warrant. *See* Government's Exhibits 2 and 3. Defendant agreed at the time of hearing that the "forensic search warrants" could be admitted for that limited purpose.

[5] The application for search warrant, attachments, and search warrant were introduced at the instant hearing as Government's Exhibit 1.

8.     J.P. stated that during the last year, Defendant has asked J.P. for nude photographs on at least 60 occasions.

9.     J.P. stated that during the first incident, Defendant offered J.P. a remote controlled car in exchange for the nude photograph.

10.    J.P. stated that he had received several gifts from Defendant in exchange for nude photographs, including a remote controlled car, a remote controlled helicopter, and several plastic model cars.

11.    J.P. stated that he had used his own cellular phone to take nude pictures of himself for Defendant and send them to Defendant's cell phone (identifying Defendant's cell phone number).

12.    J.P. stated that Defendant had used Defendant's cell phone to take nude pictures of J.P. while at Defendant's residence on Alice Street in Sioux City.

13.    J.P. stated that Defendant had also video recorded J.P. masturbating.

14.    J.P. stated that Defendant told J.P. that Defendant needed the photographs so that he could send them to Defendant's girlfriend.

15.    J.P. stated that Defendant said that his girlfriend gave him money for the photographs, which Defendant used to buy J.P. gifts.

16.    J.P. stated that on a couple of occasions, J.P. refused to provide Defendant with photographs and Defendant got "pissed off."  On those occasions, Defendant told J.P. that Defendant could not get any money, so he could not buy J.P. gifts.

17.    J.P. stated that Defendant had touched J.P.'s penis on numerous occasions.  Defendant would tell J.P. that Defendant's girlfriend wanted specific pictures, which is why Defendant would photograph J.P.'s penis while Defendant was holding it.

18.    J.P. stated that Defendant has a laptop computer at his residence.

19.    J.P. stated that Defendant used the computer to show J.P. pornography in the past.    According to J.P., Defendant was viewing "regular pornography" and showed it to J.P.

Also attached to the search warrant application was an "Informant's Attachment." J.P. is identified by name in the informant's attachment. He is described as "a student in good standing," and "a person of truthful reputation," with "no motive to falsify the information." The informant's attachment asserts that J.P. "has not given false information in the past," and that the information supplied by J.P. was corroborated by law enforcement as follows: "[J.P.] described GLEAVES as having a Droid cell phone and living on South Alice St, Gleaves was stopped on June 29, 2011 leaving the residence on South Alice and was found in possession of a Droid cell phone."

At the time of hearing, Detective Hansen explained that while he was preparing the search warrant application, he sent two "plain clothes" detectives to watch Defendant's house. After seeing Defendant leave his residence, they conducted a traffic stop. Defendant then agreed to accompany the officers to the police station. (Hansen was unable to provide any details regarding the stop or the manner in which Defendant was transported to the police station.) As part of that encounter, Defendant "was found in possession of a Droid cell phone." Defendant was arrested following his interview at the police station.

The search warrant application and supporting attachments were presented by Detective Hansen to Patrick McCormick, an Iowa Senior District Judge. Judge McCormick signed the search warrant authorizing the search of the residence on South Alice Street in Sioux City. The search warrant was executed later that day.[6]

--------

[6] Two additional search warrants were obtained in this case. On July 6, 2011, a state search warrant was issued for the computer, cell phones, and memory storage devices seized on June 29, 2011. *See* Government's Exhibit 2. A similar federal search warrant was obtained on January 12, 2012. *See* Government's Exhibit 3. Defendant does not
(continued...)

## IV. ISSUES PRESENTED

Defendant asserts that the search warrant issued for his residence on June 29, 2011 was not supported by probable cause and, accordingly, any evidence obtained as a result of the search must be suppressed.[7] At the time of hearing, Defendant also argued – for the first time – that the warrant was overbroad. The Government disputes Defendant's allegations and, alternatively, argues that the good faith exception found in *Leon* precludes suppression of the evidence.[8]

## V. DISCUSSION

### A. Was the Motion to Suppress Timely Filed?

Before considering the arguments raised by the parties, I will first address the issue of whether the motion to suppress was timely filed. Defendant was arraigned on March 1, 2012. The Scheduling Order entered at that time provided that all nontrial-related motions, including motions to suppress, "must be filed within **28 days** after the date of the arraignment." Order Setting Jury Trial (docket number 8) at 2, ¶ IV(A). Accordingly, the deadline for filing a motion to suppress was March 29, 2012.

---

[6] (...continued)
claim any defects in the forensic search warrants, except to the extent they may constitute "fruit" of the earlier search at Defendant's residence.

[7] In his motion to suppress, Defendant asks that the Court suppress "any and all evidence seized by law enforcement officials from the residence, vehicle and person of Defendant on June 29, 2011, pursuant to search warrant." Similarly, Defendant's brief is limited to issues regarding the validity of the search warrant. The Court notes that the search warrant authorizes a search of Defendant's residence on Alice Street in Sioux City. The evidence established that a cell phone was apparently obtained from Defendant during or after a traffic stop on June 29, 2011. Defendant has not raised or briefed the validity of the traffic stop, or the seizure of a cell phone, and those issues will not be addressed by the Court.

[8] *United States v. Leon*, 468 U.S. 897 (1984).

Defendant did not file a motion to suppress by the deadline established by the Court. Instead, on the deadline for filing nontrial-related motions, Defendant filed a Motion for Extension of Time to File. *See* docket number 20. In an Order filed on the same date, the Court concluded that Defendant had failed to show good cause for an extension of the deadline to file pretrial motions. Nonetheless, "to avoid any prejudice to Defendant," the Court extended the deadline to April 5, 2012. Order Denying Motion for Extension of Time (docket number 21) at 2.

Defendant did not file a motion to suppress by the extended deadline established by the Court. Instead, the instant motion to suppress was filed on April 9. Defendant did not file a motion to extend the deadline again, nor did he provide any explanation for his failure to comply with the Court's order.

The Government is not asking that the motion to suppress be summarily denied due to its untimeliness. Similarly, I am not recommending that the motion be denied for that reason. While Defendant's blatant disregard for Court orders is frustrating, at best, denial of the motion on that ground may invite a later claim for ineffective assistance of counsel.

### B. *Was the Search Warrant Supported by Probable Cause?*

I will first address Defendant's assertion that the search warrant issued by Judge McCormick was not supported by probable cause. In his brief, Defendant argues that there was "insufficient evidence presented to the issuing state judge to establish the requisite nexus between Defendant's residence and any crime involving child pornography."[9] According to Defendant, the application provides "no indication as to where the video recording taken by Defendant of J.P. masturbating took place."[10] Defendant further asserts that nude pictures taken at Defendant's residence is "immaterial because the taking of nude pictures does not constitute sexually explicit conduct pursuant

---

[9] Defendant's Brief (docket number 26-1) at 3.

[10] *Id.*

to 18 U.S.C. § 2256."[11] Noting that the application does not refer to J.P.'s age or date of birth, Defendant argues that "the Application for Search Warrant fails to establish that a crime had been committed, whatsoever."[12]

The Fourth Amendment to the United States Constitution protects persons and their houses against unreasonable searches and seizures. A warrant is required to search a person's house, with certain exceptions not applicable here. *Kentucky v. King*, ___ U.S. ___, 131 S. Ct. 1849, 1856 (2011). "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. CONST. AMEND. IV. In making a probable cause determination, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Stated otherwise:

> If an affidavit in support of a Search Warrant "sets forth sufficient facts to lead a prudent person to believe that there is a 'fair probability that contraband or evidence of a crime will be found in a particular place,'" probable cause to issue the warrant has been established.

*United States v. Grant*, 490 F.3d 627, 631 (8th Cir. 2007) (quoting *United States v. Warford*, 439 F.3d 836, 841 (8th Cir. 2006)). Probable cause "is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *United States v. Colbert*, 605 F.3d 573, 577 (8th Cir. 2010) (quoting *Gates*, 462 U.S. at 231). As such, the Court examines the sufficiency of a search warrant affidavit using a "common sense" and not a "hypertechnical" approach. *Grant*, 490 F.3d at 632 (citing *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005)). The totality of the circumstances is considered in

---

[11] *Id.*

[12] *Id.* at 4.

determining whether probable cause was established to issue a search warrant. *Id.* at 631 (citation omitted).

In this case, no oral testimony was presented to Judge McCormick when the search warrant was issued. When an issuing judge relies solely on the written application to issue a search warrant, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *Solomon*, 432 F.3d at 827. Here, Judge McCormick concluded that the information provided by Detective Hansen in the application established probable cause, and he issued a warrant to search Defendant's residence.[13]

Judge McCormick was told in the search warrant application that after receiving a report of possible sexual abuse, Detective Hansen met with the alleged victim, who was described as a "juvenile male," and his parents. The alleged victim (who was identified in the application) told Hansen that Defendant coached his baseball team. According to the victim, Defendant had asked him for nude photographs on at least 60 occasions during the previous year. The victim had used his own cell phone to take pictures to send to Defendant, and Defendant had used his cell phone to take nude pictures of the victim at Defendant's residence. The victim also told Hansen that Defendant had video recorded the victim masturbating. Judge McCormick was also told that the alleged victim reported Defendant had touched the victim's penis "numerous times," and photographed the

---

[13] Defendant notes that in his "endorsement" to the search warrant application, Judge McCormick does not check the two sentences at the bottom of the page, which state "[t]he information (is/is not) found to justify probable cause" and "I therefore (do/do not) issue the warrant." Endorsement on Search Warrant Application (docket number 32-2) at 9. It is undisputed, however, that Judge McCormick did, in fact, issue a search warrant. Accordingly, it is clear that Judge McCormick did, in fact, find probable cause. The Court concludes that the two sentences which were left uncompleted at the bottom of the "endorsement" are not necessary to a determination of whether probable cause existed for the issuance of the warrant.

victim's penis while Defendant was holding it. According to the victim, Defendant had a laptop computer at his residence which was used for viewing pornography.

In arguing that the search warrant application fails to establish probable cause, Defendant focuses primarily on the fact that J.P.'s age is not specifically identified. While Detective Hansen testified that he knew J.P.'s date of birth when the application was drafted, he neglected to include that information in his attached narrative. Instead, the attachment simply states that "[o]n June 24, 2011, a [*sic*] unknown individual called the Department of Human Services to report possible Sexual Abuse of a juvenile male named [J.P.]."[14]

In its resistance, the Government argues that J.P.'s age may be reasonably inferred from a commonsense reading of the application. Not only is he described as a "juvenile male," the attachment also informed Judge McCormick that Detective Hansen contacted J.P.'s mother, J.P.'s parents brought him to the police department, Defendant coached J.P.'s baseball team, and J.P. "received the remote controlled car, a remote controlled helicopter and several plastic model cars in exchange for nude photographs." J.P. is also described in the "informant's attachment" as "a student in good standing." Hansen's attachment also includes the conclusory statement that he believes that Defendant is in possession of "child pornography."

Unquestionably, including J.P.'s age or date of birth on the search warrant application would have been preferred. A failure to include that information does not, however, automatically prevent a finding of probable cause. If a reasonable person could conclude using a commonsense, and not a hypertechnical, approach that J.P. was a minor, then the failure to provide J.P.'s date of birth or specific age is not fatal to a finding of probable cause. *Grant*, 490 F.3d at 632. Here, an anonymous source described J.P. as a "juvenile." That description is supported by the other allegations found in the

_____

[14] Officer's Attachment (docket number 32-2) at 4.

attachment. Based on all of the information contained in the search warrant application, I believe a reasonable person could conclude that J.P. is a minor.

As set forth above, the application also advised Judge McCormick that Defendant had used his cell phone to take nude pictures of J.P. while at Defendant's residence, that Defendant had video recorded J.P. masturbating, that Defendant had touched J.P.'s penis on numerous occasions and had photographed J.P.'s penis while Defendant was holding it, and that Defendant had a laptop computer at his residence which had been used to show J.P. pornography. Based on the totality of the circumstances, I believe that these facts are sufficient to lead a prudent person to believe that there was a "fair probability that contraband or evidence of a crime" would be found at Defendant's residence. *Grant*, 490 F.3d at 631.

In his motion to suppress, Defendant references the "reliability of the informants," noting that information regarding J.P. is provided in an "informant's attachment." *See* docket number 32-2 at 6. In his brief, however, Defendant does not provide any argument regarding what significance the Court should attach to that fact. The Government assumes in its resistance that the reference is a challenge to the reliability of J.P.'s statements, and notes that crime victims do not require the same degree of corroboration as a "professional informant." *See United States v. Nguyen*, 2006 W.L. 3486993 (D. Minn.) at *7. *See also United States v. Button*, 653 F.2d 319, 326 (8th Cir. 1981). Here, J.P. provided detailed allegations regarding Defendant, with no apparent motive to lie, and which were partially corroborated by officers finding a Droid cell phone in Defendant's possession. I believe that Judge McCormick could easily find the allegations contained in the application to be credible.

Other arguments raised by Defendant in his brief are similarly unavailing. Defendant complains that "Detective Hansen provided no indication as to where the video

recording taken by Defendant of J.P. masturbating took place."[15] The issue is not, however, where the video recording took place, but whether there was a fair probability that evidence of the crime could be found at Defendant's residence. *Grant*, 490 F.3d at 631. Defendant also complains in his motion to suppress that "[n]o evidence was provided to establish probable cause that the acts enumerated in paragraph 11 above were in or affecting interstate or a foreign commerce."[16] In his brief, however, Defendant does not provide any argument regarding the significance of that fact. It should be recalled that this was a warrant being sought in state court for a violation of state law. Similarly, Defendant notes in his motion that "[t]he issuing state judge did not indicate what law had been violated and what evidence of such law violation was being sought."[17] Again, Defendant provides no authority regarding the significance of that fact.

Defendant also argues that "[r]eference to the 'nude pictures' taken at Defendant's residence is immaterial because the taking of nude pictures does not constitute sexually explicit conduct pursuant to 18 U.S.C. § 2256."[18] In this case, however, the search warrant was being sought for an alleged violation of state law. Under Iowa law, it is unlawful to "employ, use, persuade, induce, entice, coerce, solicit, knowingly permit, or otherwise cause or attempt to cause a minor to engage in a prohibited sexual act or in the simulation of a prohibited sexual act," or possess any images of a minor engaged in a prohibited sexual act. Iowa Code § 728.12(1) and (3). A "prohibited sexual act" includes "fondling or touching the pubes or genitals of a minor" and "nudity of a minor for the purpose of arousing or satisfying the sexual desires of a person who may view a depiction of the nude minor." Iowa Code § 728.4(7)(c) and (g). Accordingly, it is unlawful to

---

[15] Defendant's Brief (docket number 26-1) at 3.

[16] Motion to Suppress Evidence (docket number 26) at 3, ¶ 17.

[17] *Id.* at 4, ¶ 26.

[18] Defendant's Brief (docket number 26-1) at 3.

possess nude photos of a minor for the purpose of arousing one's sexual desires. Photos of Defendant touching J.P.'s penis, or video recordings of J.P. masturbating, would also be evidence of a crime.

In summary, I believe the totality of the circumstances described in the search warrant application and supporting affidavits set forth sufficient facts to lead a prudent person to believe that there was a fair probability to believe that evidence of a crime could be found at Defendant's residence. *Grant*, 490 F.3d at 631. Therefore, I do not believe Defendant is entitled to relief on this ground.

### C. Was the Search Warrant Overbroad?

At the conclusion of the hearing, Defendant raised for the first time an argument that even if there was probable cause to search Defendant's residence for a cell phone, the application did not support a warrant to search for other electronic storage devices. The argument was not included in Defendant's motion to suppress, nor was it briefed by Defendant. Not surprisingly, the Government did not address the issue in its resistance. In an effort to avoid prejudice to Defendant, the Court gave both parties until April 25 to file supplemental briefs on the subject.

In its supplemental brief, the Government cited *United States v. Summage*, 481 F.3d 1075 (8th Cir. 2007). There, the warrant authorized the search and seizure of all videotapes and DVDs, pornographic pictures, video and digital recording devices and equipment, all equipment that is used to develop, upload, or download photographs and movies, and computers, despite the fact that when the warrant was applied for the officers knew only that a video and photographs supposedly existed. *Id.* at 1079. The district court granted defendant's motion to suppress, finding the warrant was overbroad and lacking in particularity. The Eighth Circuit Court of Appeals reversed. The Court concluded that "[b]ecause no indication was given regarding the nature of the format in which the sought-for video and photographs were created or stored, it was necessary to search a broad array of items for the relevant materials." *Id.* at 1079-80.

Similarly, the defendant in *United States v. Alexander*, 574 F.3d 484 (8th Cir. 2009), argued that a search warrant was facially overbroad because it authorized the search of "digital storage devices" and other items, including his computer, despite the fact that "there was no evidence that his computer was used in making the surreptitious recordings." *Id.* at 489-90. The Eighth Circuit Court of Appeals rejected the defendant's argument. Since the sexual activity was recorded using a digital camera, the Court concluded that "it was a fair inference that illicit recordings of people in a state of nudity or sexual activity would be found stored on digital devices." *Id.* at 490. The Court in *Alexander* cited *United States v. Flanders*, 468 F.3d 269, 271-72 (5th Cir. 2006) (use of digital camera to photograph naked child supported probable cause to search computer).

Here, the search warrant application advised Judge McCormick that J.P. had sent nude photographs to Defendant's cell phone, and that Defendant had used Defendant's cell phone to take nude pictures of J.P. at Defendant's residence. The application also stated that Defendant had video recorded J.P. masturbating, and Defendant photographed J.P.'s penis while Defendant was holding it, although the application is silent regarding what device was used for the video recording or photographs. The search warrant application further advised Judge McCormick that J.P. stated Defendant had a laptop computer at his residence, which he had used to show J.P. pornography in the past. Clearly, there was probable cause to support a search for any cell phones at Defendant's residence. In addition, I believe that a prudent person could conclude that there was a "fair probability" that evidence of a crime would be found on Defendant's computer or external electronic storage devices. Accordingly, I do not believe that the search warrant signed by Judge McCormick was overbroad.

### D. Is the Leon Good-Faith Exception Applicable?

As set forth above, I believe the search warrant executed on June 29, 2011 was supported by probable cause and not overbroad. Accordingly, I believe it is unnecessary to consider the Government's alternative argument that the *Leon* good-faith exception

precludes suppression of the seized evidence.[19] Nonetheless, I will address the issue in case the district court disagrees with my analysis on probable cause.

The Constitution does not expressly prohibit the introduction of evidence obtained in violation of the Fourth Amendment. *United States v. Leon*, 468 U.S. 897, 906 (1984). Rather, the exclusionary rule is "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *Id.* (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)). The Court noted in *Leon* that it "frequently questioned whether the exclusionary rule can have any deterrent effect when the offending officers acted in the objectively reasonable belief that their conduct did not violate the Fourth Amendment." *Id.* at 918. After reviewing the purposes of the exclusionary rule, the Court concluded that "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant" will not be suppressed. *Id.* at 922. An officer's reliance on a search warrant is not "objectively reasonable," however, if one of four circumstances is present:

> The Supreme Court has identified four circumstances in which an officer's reliance on a search warrant would be objectively unreasonable: (1) when the affidavit or testimony in support of the warrant included a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the judge "wholly abandoned his judicial role" in issuing the warrant; (3) when the affidavit in support of the warrant was "so lacking in

---

[19] The issues of probable cause and the good-faith exception may be addressed by the district court in either order. That is, if the district court finds that probable cause existed for the issuance of the search warrant, then it need not address the *Leon* issue. On the other hand, if the district court concludes that the *Leon* good-faith exception is applicable, then it need not address the issue of whether the search warrant is supported by probable cause. *See, e.g.*, *United States v. Pruett*, 501 F.3d 976, 979 (8th Cir. 2007) ("If the District Court was correct in concluding that the *Leon* good-faith exception to the exclusionary rule applies, it is unnecessary for us to engage in a probable-cause analysis."); *United States v. Ross*, 487 F.3d 1120, 1122 (8th Cir. 2007); *United States v. Puckett*, 466 F.3d 626, 629 (8th Cir. 2006).

> indicia of probable cause as to render official belief in its
> existence entirely unreasonable"; and (4) when the warrant is
> "so facially deficient" that the executing officer could not
> reasonably presume the warrant to be valid.

*Grant*, 490 F.3d at 632-33 (citing *Leon*, 468 U.S. at 923).

Anticipating the Government's good-faith argument, Defendant addressed the *Leon* issue in the brief filed in support of his motion to suppress. Defendant argues that the exception found in *Leon* to the exclusionary rule is not applicable because the officers' reliance on the search warrant here was not "objectively reasonable." Specifically, Defendant relies on the third prong in *Leon*, which provides that an officer's reliance on the search warrant is not objectively reasonable if the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Grant*, 490 F.3d at 632-33; *Leon*, 468 U.S. at 923.

In *United States v. Ross*, 487 F.3d 1120 (8th Cir. 2007), the Court noted that "'entirely unreasonable' is not a phrase often used by the Supreme Court, and we find nothing in *Leon* or in the Court's subsequent opinions that would justify our dilution of the Court's particularly strong choice of words." *Id.* at 1122-23 (quoting *United States v. Carpenter*, 341 F.3d 666, 670 (8th Cir. 2003)). As set forth above, I believe the search warrant application and supporting attachments establish probable cause to search Defendant's residence. Even if the district court finds that probable cause was lacking, however, it was not "so lacking" that the officers' reliance on the search warrant was "entirely unreasonable." *See also United States v. Gibson*, 928 F.2d 250, 253 (8th Cir. 1991) ("Ordinarily, a police officer cannot be expected to question a judge's probable cause determination.").

In determining whether an officer's reliance on a search warrant is objectively reasonable, "all of the circumstances – including whether the warrant application had previously been rejected by a different magistrate – may be considered." *Leon*, 468 U.S. at 922, n.23. That is, a determination of the officer's good faith is not limited to the

information found within the four corners of the application. The Court "must look to the totality of the circumstances, including any information known to the officers but not presented to the issuing judge." *United States v. Houston*, 665 F.3d 991, 995 (8th Cir. 2012) (quoting *United States v. Proell*, 485 F.3d 427 (8th Cir. 2007)). Here, Detective Hansen knew that J.P. was only 15 years old, although he neglected to include that information in the search warrant application. Defendant concedes that if the Court considers information known by Hansen at the time the application was submitted – but not reflected in the application itself – in determining whether Hansen acted in good faith, then the good-faith exception to the exclusionary rule would apply. Defendant argued for the first time at the hearing, however, that Eighth Circuit precedent is no longer valid given a recent decision by the United States Supreme Court in *Messerschmidt v. Millender*, _____ U.S. _____, 132 S. Ct. 1235 (decided Feb. 22, 2012).[20]

*Messerschmidt* is a section 1983 action brought against deputy sheriffs and a county sheriff's department by occupants of a residence who were subjected to a nighttime search and seizure. The district court granted summary judgment to the plaintiffs, concluding that the search warrant was overbroad and the officers were not entitled to qualified immunity from damages. The Ninth Circuit Court of Appeals affirmed the denial of qualified immunity. The United States Supreme Court reversed, finding the officers were entitled to qualified immunity. In arguing that *Messerschmidt* overrules existing Eighth Circuit precedent, Defendant here cites footnote 6, which states:

> The dissent relies heavily on Messerschmidt's deposition, in which he stated that Bowen's crime was not a "gang crime." See *post*, at 1254–1256. Messerschmidt's belief about the nature of the crime, however, is not *information* he possessed but a *conclusion* he reached based on information known to him. See *Anderson v. Creighton*, 483 U.S. 635, 641, 107

---

[20] Because Defendant had not previously briefed this issue or alerted the Government to his argument, the Court granted the parties until April 25 to file a supplemental memorandum.

S. Ct. 3034, 97 L. Ed. 2d 523 (1987). We have "eschew[ed] inquiries into the subjective beliefs of law enforcement officers who seize evidence pursuant to a subsequently invalidated warrant." *United States v. Leon*, 468 U.S. 897, 922, n.23, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984); see also *Harlow v. Fitzgerald*, 457 U.S. 800, 815-819, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). In any event, as the dissent recognizes, the inquiry under our precedents is whether "a reasonably well-trained officer in petitioner's position would have known that *his affidavit* failed to establish probable cause." *Malley*, 475 U.S., at 345, 106 S. Ct. 1092 (emphasis added). Messerschmidt's own evaluation does not answer the question whether it would have been unreasonable for an officer to have reached a different conclusion from the facts in the affidavit. See n.2, *supra*.

*Messerschmidt*, 132 S. Ct. at 1248, n.6.

I believe Defendant's reliance on *Messerschmidt* is misplaced. Eighth Circuit precedent holds that in determining whether an officer's reliance on a search warrant is objectively reasonable, the Court must consider information known to the officer but not included in the search warrant application. *Houston*, 665 F.3d at 995; *Proell*, 485 F.3d at 431; *Marion*, 238 F.3d at 969. In *Leon*, the Court stated that "all of the circumstances . . . may be considered" in determining an officer's good faith. 468 U.S. at 922, n.23. The issue in *Messerschmidt* was whether the officers were entitled to immunity from damages, even assuming the warrant should not have been issued. 132 S. Ct. at 1244. "Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Id.* at 1245 (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). The Court recognized in *Leon*, however, that "[t]he situations are not perfectly analogous." 468 U.S. at 922, n.23.

In cases involving an alleged Fourth Amendment violation, "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an

objectively reasonable manner or, as we have sometimes put it, in 'objective good faith.'"
*Messerschmidt*, 132 S. Ct. at 1245 (citing *Leon*, 468 U.S. at 922-23). However, the fact
that a neutral magistrate issued a warrant "does not end the inquiry into objective
reasonableness." The "shield of immunity" is lost in a section 1983 action where the
warrant was "based on an affidavit so lacking in indicia of probable cause as to render
official belief in its existence entirely unreasonable." *Id.* (citing *Leon*).

The search warrant in *Messerschmidt* authorized a search for, among other things,
evidence regarding the suspect's gang affiliation. In his deposition, the officer testified
that the crime was not a "gang crime." In footnote 6, the majority first noted that
Messerschmidt's deposition testimony was a conclusion reached by him, as opposed to
information he possessed, and it generally "eschews" consideration of an officer's
subjective beliefs. The Court then states that "the inquiry" is whether "a reasonably well-
trained officer in petitioner's position would have known that *his affidavit* failed to
establish probable cause." Defendant here seizes upon that single sentence in arguing that
years of Eighth Circuit precedent, as well as the Court's own language in *Leon*, has been
overturned. The majority in *Messerschmidt* did not rely solely on the information set forth
in the affidavit, however, noting that the officer obtained approval for the search from two
of his supervisors and a deputy district attorney. 132 S. Ct. at 1243. The Supreme Court
did not address this issue in the context of the exclusionary rule, nor did it provide any
discussion or analysis of the sentence now so heavily relied on by Defendant. I believe
that it is unlikely the Eighth Circuit Court of Appeals will overturn years of established
precedent based on a single sentence found in a footnote in a section 1983 action.

As set forth above, Defendant concedes that if the Court considers information
known to Detective Hansen but not disclosed in his application for search warrant, then
Hansen's reliance on the validity of the search warrant was objectively reasonable and the
good-faith exception in *Leon* applies. Furthermore, even *if* the Court considers *only* that
information found in the search warrant application, I nonetheless conclude the affidavit

was not "so lacking" in indicia of probable cause as to render official belief in its existence "entirely unreasonable." *Grant*, 490 F.3d at 632-33; *Leon*, 468 U.S. at 923. Accordingly, I believe that even if the June 29, 2011 search warrant is invalid, Hansen's reliance on the warrant was objectively reasonable. Pursuant to the good faith exception found in *Leon*, the exclusionary rule does not apply here even if the search warrant is invalidated.

### E. Summary

In summary, I believe the search warrant issued by Judge McCormick on June 29, 2011 was supported by probable cause. Furthermore, I do not believe that the warrant was overbroad. Even if the search warrant is invalid, however, I believe Detective Hansen's reliance on the warrant was objectively reasonable. Accordingly, the good-faith exception to the exclusionary rule applies. Therefore, I respectfully recommend that Defendant's motion to suppress be denied.

### VI. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the Motion to Suppress Evidence (docket number 26) filed by the Defendant be **DENIED**.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. *The parties are reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections." Accordingly, if the parties are going to object to this Report and Recommendation, they must promptly order a transcript of the hearing held on April 24, 2012.*

DATED this _27th_ day of April, 2012.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA